# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| LEANNA L. PEACHEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14-00056-CV-W-DGK-SSA |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Leanna L. Peachey's applications for Social Security benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had several severe impairments, including major depressive disorder, post-traumatic stress disorder, asthma, and obesity, but retained the residual functional capacity ("RFC") to perform unskilled work with many restrictions.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her applications in August 2009, alleging a disability onset date of July 4, 2009. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed

the denial to an ALJ. The ALJ held a hearing, and on October 21, 2010, the ALJ issued a decision finding Plaintiff was not disabled. Plaintiff appealed this decision to the Appeals Council, which granted her request for review. On March 8, 2012, the Appeals Council remanded the case for a new hearing to: (1) develop the record concerning Plaintiff's mental impairments; (2) reconsider her RFC; and (3) if necessary, to obtain evidence from a vocational expert ("VE"). The Commissioner held a second administrative hearing on September 4, 2012, with a different ALJ. The ALJ found Plaintiff was not disabled, and the Appeals Council denied Plaintiff's request for review on October 24, 2012, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ erred as a matter of law because: (1) she failed to consider information and observations from a third-party source; (2) she failed to properly consider Plaintiff's obesity; (3) her RFC determination is unsupported by substantial evidence on the record as a whole; and (4) she failed to recognize that Plaintiff could not perform the jobs identified by the VE. These arguments are without merit.

**A.**     **The ALJ properly considered information from the third-party source.**

Plaintiff first argues that the ALJ failed to consider the third-party statement from Defendant's own employee, a claims representative who interviewed Plaintiff. This employee, identified only as "G. Barr," reported that during the interview Plaintiff had difficulty with understanding, coherency, concentration, talking, and answering questions; that she was very anxious, speaking rapidly and constantly; that she had trouble staying focused, going "off on a lot of tangents;" and she "made lots of random comments." R. at 304-05. The employee concluded that it was a "[d]ifficult interview." R. at 305.

Plaintiff, however, overlooks that the ALJ noted this interview and briefly discussed it in her opinion. R. at 14. In fact, the ALJ used this interview to support her finding that Plaintiff

3

had moderate difficulties with respect to concentration, persistence, and pace. *Id.* Consequently, this claim is meritless.

**B.     The ALJ properly considered Plaintiff's obesity.**

Next, Plaintiff contends the ALJ ignored the impact of Plaintiff's obesity on her severe major depressive disorder at steps three, four, and five in the sequential evaluation process. With respect to steps three and four, Plaintiff overlooks the relevant portions of the ALJ's decision. The ALJ addressed Plaintiff's obesity at step three of the sequential evaluation process, noting that "the claimant suffers from obesity but the claimant's obesity, alone or in combination with her other impairments, fails to meet or medically equal a listed impairment." R. at 13. The ALJ also referenced Plaintiff's obesity at step four when discussing her testimony. R. at 16.

Finally, Plaintiff's argument fails to recognize that the ALJ had no reason to discuss her obesity at step five because the evidence on the record shows that Plaintiff's obesity, even combined with her other impairments, did not require limitations beyond those already contained in the RFC determination. Although Plaintiff's doctors recognized her obesity was a serious health problem, R. at 529, none of them suggested it limited her ability to work. Indeed, Plaintiff did not allege any limitations stemming from her obesity in her own disability reports, function reports, or administrative testimony. R. at 29-55, 308, 356, 377, 387, 755-64. Hence, the ALJ did not err here. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) ("Although his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.").

4
Case 4:14-cv-00056-DGK   Document 21   Filed 02/18/15   Page 4 of 9

**C.    Substantial evidence supports the RFC determination.**

With respect to her RFC, the ALJ found Plaintiff possessed the ability

> to perform a full range of work at all exertional levels but with the following nonexertional limitations:  Due to medication effects, the claimant cannot climb ladders or scaffolds; and cannot be exposed to dust, odors, or fumes due to her asthma.  She is limited to simple, routine and repetitive tasks but cannot work at a production rate pace (such as an assembly line or at a job which required completion of a certain number of tasks in a certain period of time); she is limited to occasional interaction with supervisors and co-workers, and should have no contact with the general public; and she is limited to simple work related decisions.

R. at 15.  Plaintiff argues this determination is not supported by substantial evidence because (1) the ALJ erred in rejecting the various Global Assessment of Functioning ("GAF")[2] scores on the record; and (2) the ALJ erred in giving more weight to the opinion of an examining psychologist, Dr. Rick Thomas, Ph.D., than to the opinions of her treating psychiatrist, Dr. Stephen Samuelson, M.D., and treating psychologist, Dr. Mary Lyndell, Ph.D.

The Court holds the ALJ did not err in giving greater weight to the various GAF scores in the record.  The ALJ specifically discussed several of these scores and noted the inherent limitations of a GAF score as a diagnostic tool and its "dubious" applicability in determining a claimant's ability to work.  *See Mosier v. Colvin*, No. 4:13-06112, 2014 WL 4722288, at *3 (W.D. Mo. Sept. 23, 2014) (discussing its limitations and noting "the fifth edition of the Diagnostic and Statistical Manual of Medical Disorders ("DSM–5") has dropped the GAF scale as a diagnostic tool").

The ALJ also did not err in giving greater weight to Dr. Thomas's opinion in formulating Plaintiff's RFC.  A claimant's RFC is based on the combined effects of all of a claimant's

---

[2] GAF scores are a clinician's personal assessment of an individual's social, occupational, and psychological functioning.  *Mortensen v. Astrue*, No. 10-4975 (JRT/JJG), 2011 WL 7478305, at *2 n.4 (D. Minn. Sept. 30, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders* 32-33 (4th ed., Am. Psychiatric Ass'n 1994)).

5

*credible* limitations. 20 C.F.R. § 416.945 (emphasis added). In determining a claimant's RFC, the ALJ may consider a host of factors, including the claimant's medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and attempts to work. SSR 96-8p. It is the claimant's burden to prove her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Court emphasizes that the regulations restrict the RFC determination to credible limitations because the ALJ found Plaintiff's statements concerning the limiting effects of her symptoms were not credible to the extent they indicated she could not perform any work. R. at 16, 19. And Plaintiff does not challenge the ALJ's adverse credibility determination.

Furthermore, where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Here substantial evidence supports the ALJ's decision to discount the treating physicians' opinions and give greater weight to Dr. Thomas's report. To be fair, the ALJ did embrace a portion of Dr. Samuelson's opinion, limiting Plaintiff to work with simple instructions and jobs with no interaction with the public. R. at 15, 197-98. Although he discounted the balance of Dr. Samuelson's opinion, he gave good, detailed reasons for doing so. For example, he discounted Dr. Samuelson's opinion that Plaintiff had suffered from disabling symptoms for over ten years

6
Case 4:14-cv-00056-DGK   Document 21   Filed 02/18/15   Page 6 of 9

because he noted Plaintiff had actually worked a fair amount during this period. R. at 18-19, 499, 504-05. The ALJ also gave good reasons for discounting Dr. Lyndell's opinion: Dr. Lyndell treated Plaintiff for only two months, her opinion was based on Plaintiff's subjective reports that she was unable to work, and Plaintiff had impliedly threatened the doctor concerning her pending applications for benefits. R. at 19, 698.

Additionally, substantial evidence supports Dr. Thomas's opinion that Plaintiff could work full-time. Plaintiff herself told Dr. Thomas that she believed she could be gainfully employed, and that she ascribed her failure to maintain employment in part to her dislike of doing things that did not interest her. R. at 464-65. Dr. Thomas also noted that Plaintiff's failure to consistently take her medication exacerbated her mental health problems and made it difficult for her to maintain employment, indicting her limitations were not as great as she now suggests. R. at 464-65. *See Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.")

That said, the Court recognizes that Plaintiff has a significant, long-lasting mental health problem, and that some evidence on the record supports her allegations. However, once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010). Accordingly, the Court cannot grant Plaintiff the relief she requests.

**D.     The ALJ did not err in finding Plaintiff could perform the jobs identified by the VE.**

Finally, Plaintiff argues there is not substantial evidence in the record supporting the ALJ's finding that jobs exist in the national economy which she could perform. Plaintiff contends all the jobs identified by the VE require skills she lacks.

7

During the administrative hearing, the ALJ asked the VE to assume a person of Plaintiff's age, education, and experience who had an RFC consistent with the ALJ's RFC determination. R. at 55-56. Among other things, this individual was limited to jobs involving "simple work related decisions," what the Dictionary of Occupational Titles ("DOT") describes as level one reasoning. R. at 56. The VE replied that such an individual could work as a hospital cleaner, merchandise marker, or document preparer. R. at 57.

Plaintiff contends she cannot perform the first two jobs because they require level two reasoning skills, which means the ability to understand and carry out *detailed* instructions. As Defendant rightly notes, however, "a claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT definitions are simply generic job descriptions that offer the appropriate maximum requirements for each position, rather than their range." *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) (internal quotations omitted). "The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or certain localities." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (holding that an ALJ did not err in relying on VE testimony that a claimant limited to simple work could perform a position categorized by the DOT as reasoning level two). The regulations recognize that the generic nature of the DOT's job descriptions may require, as in this case, a VE's testimony to determine whether an individual with the claimant's specific vocational profile can perform work in the national economy. *See* SSR 00-04p ("We may also use [vocational experts] . . . to resolve complex vocational issues.")

The VE's testimony that Plaintiff could perform either of these two jobs is all that is required to support the ALJ's finding that Plaintiff is not disabled, as long as that job exists in significant numbers in the national economy. *Hakes v. Astrue*, 383 F. App'x 581, 583 (8th Cir. 2010). The VE testified that there were 865,960 hospital cleaner jobs in the national economy

and 3,174 in Missouri, and there were over 1 million merchandise marker jobs throughout the country and 7,526 in Missouri.  R. at 21, 57.  This exceeds the number required for a job to exist in "significant" numbers.  *See, e.g., Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (holding 500 jobs within the claimant's region is a "significant" number).  Accordingly, substantial evidence in the record supports the ALJ's finding that jobs exist in the national economy which she could perform.

## Conclusion

Substantial evidence on the record supports the Commissioner's decision, and so the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     February 18, 2015                    /s/ Greg Kays
                                               GREG KAYS, CHIEF JUDGE
                                               UNITED STATES DISTRICT COURT